UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Criminal No. 22-CR-213 (TSC) |
| | : | |
| GARY WILLIAMS, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENENCING**

The United States of America, by its attorney, the United States Attorney for the District of Columbia, respectfully submits this Memorandum in Aid of Sentencing. As set forth below, the government respectfully requests that the Court sentence the defendant to a term of incarceration within the Sentencing Guidelines range of 120 to 131 months, 4 years of supervised release and forfeiture. The defendant pleaded guilty to an Information charging him with Possession with Intent to Distribute 10 Grams or More of Actual Phencyclidine (PCP) in violation of 21 U.S.C. §§ 841 (a)(1) and (b)(1)(B)(iv) (Count 1), and Using, Carrying, and Possessing a Firearm During a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1) (Count 2). The defendant is facing a total statutory mandatory minimum term of incarceration of 10 years and a maximum of life imprisonment. See Presentence Investigation Report (PSR) dated September 16, 2022 (ECF Doc. 24) at ¶¶ 77-79. Considering the defendant's criminal behavior in this case and his criminal record, the government's recommendation is appropriate.

**I.     FACTUAL BACKGROUND**

On or about November 16, 2021, at approximately 6:00 a.m., law enforcement members of the Metropolitan Police Department (MPD) and the Federal Bureau of Investigation (FBI) executed a DC Superior Court search warrant at 241 37th Place, S.E. Apt.# 12, Washington,

D.C. 20019. After knocking and announcing multiple times, "police search warrant, open the door," and getting no response, law enforcement officers forced entry into the apartment.

Upon gaining entry, law enforcement officers observed defendant, Gary Williams, coming from the pantry in the kitchen. The officers conducted a search of the pantry and recovered the following: a privately made firearm ("PMF"), constituting a semi-automatic .40 caliber pistol which consisted of a Glock 22 slide (serial number BDU028) and a barrel (serial numberBFN202), with a 15-count magazine containing 13 rounds of ammunition in the magazine and one round in the chamber, that appeared to be in good working order and operable; a black bag containing a plastic twist containing a white powdery substance that a DEA chemist determined was 125.2 grams of cocaine, and a plastic twist containing a tan rock like substance that a DEA chemist determined was 46.2 grams of cocaine base; a shoebox containing a glass 4-ounce vial with yellow liquid with a distinct chemical odor (approximately 2/3 full of suspected Phencyclidine (PCP) that a DEA chemist determined was 16.05 grams of actual PCP and 69.63 grams of a mixture or substance containing a detectable amount of PCP; and $1,000 in U.S. Currency. A search of a kitchen cabinet revealed a plastic twist containing 69 zips with a white rock like substance that a DEA chemist determined was 8.36 grams of cocaine base. A search of a shoebox inside a bedroom revealed a plastic twist containing a white rock like substance that a DEA chemist determined was .269 grams of Eutylone Hydrochloride, a Schedule I synthetic cathinone-controlled substance also referred to as "bath salt."

A search of the defendant revealed $840 in U.S. Currency in his left rear jeans pocket. At the scene, while the search warrant was being executed, the defendant admitted that the drugs and firearm were his. The defendant was placed under arrest and gave consent to the

officers to obtain buccal DNA swabs.

The defendant admits that the narcotics are cocaine base, cocaine, and PCP, and that he possessed the narcotics with the intent to redistribute them to others. The defendant further admits that he possessed the firearm in furtherance of his drug trafficking activity, to protect himself, his drugs, and his drug proceeds.

The government would have presented a drug expert at trial who would have testified that based upon the type of narcotics, their weight and packaging, and the amount and location of the U.S. currency, the possession of the narcotics is consistent with an intent to distribute the narcotics and not to use personally. The expert would have also testified that firearms are tools of the drug trade and that drug traffickers possess and use firearms in furtherance of their drug trafficking activity to protect themselves, their drug proceeds, and their drugs from other drug traffickers and from those who rob drug traffickers.

## II. SENTENCING FACTORS

In sentencing a defendant, after calculating the appropriate guideline range, the Court must consider the factors set forth in 18 U.S.C. Section 3553. See Gall v. United States, 552 U.S. 38 (2007). These factors are in keeping with the traditional factors used by courts when imposing a sentence: (1) the protection of society against wrongdoers; (2) the punishment or discipline of the wrongdoer; (3) the reformation of the wrongdoer; and (4) the deterrence of others from the commission of like offenses. See Spanziano v. Florida, 468 U.S. 447, 477-78 (1984) (Stevens, J., concurring); see also Williams v. New York, 337 U.S. 241, 251 (1949). Finally, under the guidelines and Section 3553, similarly situated defendants should receive like punishments. See 18 U.S.C. Section 3553(a)(6).

First, the government views this as a very serious offense. The defendant was found in unlawful possession of 69.63 grams of high potency PCP (16.05 grams of actual PCP), 54.56 grams of Cocaine Base (crack), 125.2 grams of Cocaine, and .269 grams of Eutylone. The quantity and varied nature of the drugs establish that the defendant was significant drug trafficker who dealt in some of the most dangerous and addictive drugs in our community.  These drugs are significant barriers to individual and communal prosperity, public health, and community safety, which contribute to the decay of our society and community.  The defendant compounded his actions by possessing a privately made firearm which constituted a semi-automatic .40 caliber pistol and consisted of a Glock 22 slide (serial number BDU028) and a barrel (serial number BFN202), with a 15-count magazine containing 13 rounds of ammunition in the magazine and one round in the chamber. This firearm further indicates the defendants' neglect for community safety and prosperity. In fact, it signifies that the defendant would go to any length to be certain these detrimental drugs can be distributed into the community for his personal profit. The law makes clear that such an offense is of a kind that requires swift and serious consequences, to deter the recurrence of such conduct. A strong, though appropriate, sentence is necessary to ensure the safety of the community and, hopefully, to deter defendant Williams from engaging in similar criminal conduct in the future.

Second, the defendant is a recidivist with a lengthy history of criminal conduct. Williams has a criminal history which started over 30 years and includes federal and local convictions for drug trafficking, and at least one conviction for the use of firearms during crimes of violence. Despite being previously incarcerated for well over 10 years over his lifetime, Williams has continued to engage in acts that exhibit a reckless disregard for the law and his community.

4

Finally, with defendant's criminal history, it is more than appropriate and fair that the defendant be sentenced to the term requested above, not only to protect society from the effects of his criminality but to provide an opportunity for the defendant to turn from his criminal ways and reform himself into a law-abiding and productive member of society. The government believes that, considering the defendant's previous offenses, a term of incarceration can facilitate the defendant's reform—if the defendant wants to be reformed. The government hopes that defendant Williams will make full use of any educational and vocational training programs offered through the BOP to acquire marketable skills that can be utilized in a way that benefits society and himself.

WHEREFORE, for the foregoing reasons and for any other reasons that may be raised at the hearing on this matter, the government asks that the Court sentence the defendant to term of

incarceration within the Sentencing Guidelines range of 120 months to 131 months to be followed by 4 years of supervised release[1] and forfeiture.

        Respectfully submitted,
        MATTHEW M. GRAVES
        United States Attorney

By:    /s/   *George Eliopoulos*
George Eliopoulos
Assistant United States Attorney
D.C. Bar No. 390-601
601 D Street, N.W.,
5th Floor
Washington, D.C. 20530
202-252-6957
george.p.eliopoulos@usdoj.gov

---

[1] The recommended term of supervised release is warranted in this case to address concerns for the defendant's successful reintegration in the community and for the defendant to participate in substance abuse treatment and testing, to assist with his continued sobriety; participate in education and vocational programs, to allow for him to complete his secondary education and gain marketable vocational skills; to complete a cognitive behavioral treatment program, to assist the defendant in addressing his thinking patterns, and be assessed for participation in the United States District Court for the District of Columbia Reentry Court Program.